IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELLIANDER AELFRIC ELDRIDGE and MELISSA LYN SCHARFINSKI,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF ALTON, ILLINOIS,<br><br>        Defendant. | Case No. 3:24-CV-01788-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the Motions for Leave to Proceed *in forma pauperis* ("IFP") (Docs. 2, 3) and Motion for Service of Process at Government Expense (Doc. 4) filed by Plaintiffs Elliander Eldridge and Melissa Scharfinski. The *pro se* Complaint names the City of Alton, Illinois ("the City") as the sole defendant in this action. (Doc. 1).

Eldridge and Scharfinski seek to proceed in this Court without prepayment of the required filing fees. Ordinarily, the fee for filing a complaint and opening a civil case is $405.00. But an indigent party may commence a federal court action without paying the required costs and fees upon submission of an affidavit asserting his or her inability to pay the fees, the nature of the action, and the affiant's belief that he or she is entitled to redress. 28 U.S.C. § 1915(a)(1). Destitution is not required to proceed IFP; an affidavit showing that the plaintiff cannot, because of his or her poverty, provide for the necessities of life is sufficient. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339-40 (1948).

Each plaintiff filed a separate Motion for Leave to Proceed IFP with separate affidavits as to their respective financial statuses. Turning first to Eldridge's motion, he asserts that he is unemployed and receives $969 per month[1] in disability benefits. (Doc. 2). In addition, Eldridge receives food stamps valued at $201 per month. (*Id.*). Eldridge has a monthly mortgage payment of $382.87, plus homeowners' insurance of $114 per month, with property taxes around $700 per year. (*Id.*). In terms of assets, Eldridge claims to have $240.35 in savings and to own a home worth an unknown amount—he indicates that the mortgage payoff amount is $27,033.83. (*Id.*). Eldridge also has several credit cards on which he owes various amounts, costing him hundreds of dollars per month. (*Id.*). His debt is due, in part, to the financial dependency of Co-Plaintiff Scharfinski and his sole income of disability benefits. (*Id.*). Based on this financial information, the Court finds Eldridge indigent under 28 U.S.C. § 1915(a)(1).

As to Scharfinski's motion, she is also unemployed and has no monthly wages, aside from food stamp assistance. (Doc. 3). She indicates that she is disabled and financially dependent on her partner, Eldridge. (*Id.*). Scharfinski notes that she has $70.89 in savings, co-owns the home with Eldridge, owns the adjacent vacant lot to the home, which is valued at $800, and has a 2013 Toyota Prius. (*Id.*). Based on this financial information, the Court also finds Scharfinski indigent under 28 U.S.C. § 1915(a)(1).

Having determined that each plaintiff is indigent, the Court grants each motion for leave to proceed IFP. (Docs. 2, 3). But now, the Court must screen the complaint to

---

[1] Eldridge indicates that he receives $969 per month in total disability benefits ($574 from SSI and $389 from SSA). But in adding those two sources of benefits together, the total is $963 in disability benefits.

determine whether the action can proceed. Under § 1915(e)(2), the Court must dismiss the action if it is clearly frivolous or malicious, fails to state a claim, or is a claim for money damages against an immune defendant. 28 U.S.C. § 1915(e)(2)(B); *see also Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense.").

In reviewing the complaint, the undersigned is mindful that courts construe *pro se* claims generously. *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014). The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649, 651 (7th Cir. 2013). Conclusory statements and labels, however, are not enough. The complaint must allege enough facts to "state a claim to relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422-23 (7th Cir. 2013). That means "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). Instead, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* at 404.

In their complaint, Plaintiffs list the basis for federal question jurisdiction[2] as: 18 U.S.C. § 1621 (Perjury) as part of Malicious Prosecution; 42 U.S.C. § 3601 (Fair Housing Act); 5th Amendment; Due Process Rights; 6th Amendment right to representation;

---

[2] Plaintiffs also completed a section in the form complaint for diversity jurisdiction; however, such jurisdiction is not available as Plaintiffs are citizens of Illinois, and the defendant is the city in which they live (a city in Illinois).

18 U.S.C. § 1513 and 208; the Americans with Disabilities Act ("ADA"); and the Endangered Species Act ("ESA"). (Doc. 1, p. 3). Plaintiffs' complaint also includes a lengthy narrative of the antagonistic and contentious relationship between themselves and the City (and a neighbor who is not a party to this action). (*Id.* at pp. 7-14, 19-57). Plaintiffs accuse the City of repeatedly refusing to enforce ordinances against their well-connected neighbor, while holding them responsible for the consequences of their neighbor's actions. (*Id.* at p. 5). In addition, Plaintiffs allege that the City continuously excludes Eldridge from ordinance violation actions even though he is a joint owner of the property subject to such violations. (*Id.*). The City apparently ignored Plaintiffs' requests for reasonable accommodations and complaints of discrimination. (*Id.*). In a smattering of other claims, Plaintiffs assert that the City permitted smoke hazards near their residence which caused them physical injury and other damages, repeatedly ordered Plaintiffs to violate the Endangered Species Act, and refused to remove a tree that later fell on their house causing damage for which the City issued an ordinance violation against Plaintiffs. (*Id.*).

To begin, several of Plaintiffs' claims will be dismissed because they arise under criminal statutes enforceable only by the government through criminal charges, not by private citizens. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Israel Aircraft Indus. Ltd. v. Sanwa Business Credit Corp.*, 16 F.3d 198, 200 (7th Cir. 1994) ("Express provisions for criminal prosecution and administrative enforcement…without a corresponding provision for private enforcement, generally

establish that private enforcement is inappropriate."). Thus, any claims for perjury under 18 U.S.C. § 1621, acts affecting a personal financial interest under 18 U.S.C. § 208, and retaliating against a witness, victim, or informant under 18 U.S.C. § 1513 are dismissed with prejudice—meaning they cannot be raised in any amended complaint in this action.

In addition, the complaint contains allegations that the City violated Scharfinski's Sixth Amendment right to representation. During an ordinance violation hearing, the City attorney allegedly offered a "plea deal" to dismiss the case if Scharfinski maintained a nearby fence not on her property. If she rejected this "deal," the attorney apparently threatened criminal sanctions. At that time, she wanted to speak with an attorney but was evidently denied the opportunity. "In all criminal prosecutions, the accused shall enjoy the right…to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. This right to counsel attaches at the initiation of adversary judicial criminal proceedings, and until the "time of a formal charge, indictment, information or arraignment, a [person] does not have a right to counsel under the Sixth Amendment." *Yachnin v. Vill. of Libertyville*, 803 F. Supp. 2d 844, 851 (N.D. Ill. 2011); *United States v. Gouveia*, 467 U.S. 180, 189 (1984). Here, according to the complaint, Scharfinski was never formally charged, indicted, or arraigned on a criminal charge. Her Sixth Amendment claims are unavailing and will be dismissed.

Plaintiffs also generally invoke the Endangered Species Act ("ESA"). Plaintiffs allege that they cultivate a flower garden that is a habitat for the endangered rusty patched bumble bee, and that the City has ordered them to remove their flowers on multiple occasions, claiming the flowers constitute tall grasses in violation of a City weed

ordinance. If they complied with the City's directives to cut down the "tall grasses," Plaintiffs assert that they would have been forced to violate the ESA. As to the ordinance violation proceedings, Plaintiffs state that by winter the bees are gone, they cut down the flowering plants, and the City drops its case.[3]

The complaint vaguely references the ESA in its entirety without specifying a specific provision under the Act, without suggesting that the City is subject to that provision, and without explaining how the City's actions violated such provision. The Court doubts that the actions as currently alleged state a claim cognizable under the ESA, but it is difficult to determine because Plaintiffs fail to identify which part of the ESA they believe was violated or under what mechanism in the Act they bring their claims.

In any event, while the ESA does permit citizen suits under 16 U.S.C. § 1540(g), the statute requires written notice of the violation to be provided to the Secretary of the Interior or Secretary of Commerce, and to any alleged violator of any such provision or regulation, at least 60 days before the commencement of suit. 16 U.S.C. § 1540(g)(2). Plaintiffs' complaint does not demonstrate compliance with the statutory requirements to bring a citizen suit under the ESA. As such, any claims brought under the ESA are dismissed. *See e.g.*, *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 33 (1989) (analyzing similar

---

[3] Relating to the ESA allegations, Plaintiffs' contentions regarding the nature of the grasses or flowers growing in their garden should have been raised and considered as part of the state court action for the ordinance violations. Many of Plaintiffs' claims appear to relate to the various ordinance violation proceedings the City has initiated against them. To the extent that Plaintiffs challenge the resolution of the ordinance violations, this Court cannot interfere with the result of any of those state court decisions. *See Edwards v. Ill. Bd. of Admissions to Bar*, 261 F.3d 723, 728 (7th Cir. 2001) (The *Rooker-Feldman* doctrine "provides that lower federal courts do not have subject matter jurisdiction to review state court civil decisions. Plaintiffs must instead seek review through the state court system and, if necessary, petition the United States Supreme Court for a writ of certiorari.")

citizen suit provisions under the Resource Conservation and Recovery Act and finding that failure to meet the notice and 60-day delay requirements must result in the dismissal of the action as barred by the terms of the statute).

According to Plaintiffs, the City provided one of their neighbors with an open burn permit, which, due to the neighbor burning wet wood, produced an excessive amount of harmful smoke. This smoke continuously wafted onto their property and into their home. In describing this incident, Plaintiffs make passing reference to violation of the Federal Clean Air Act ("CAA"). (Doc. 1, p. 12). They state, "We argue that the City of Alton violated the Federal Clean Air Act by permission [sic] the ongoing emission of smoke to occur in a manner harmful to residents and such this is a federal question." (*Id.*). Similar to their mention of the ESA, Plaintiffs fail to identify any specific provision under the Act or explain how the City's actions, namely permitting a neighbor to openly burn wood on their own property, violated such provision. Moreover, as with the ESA, the provision of the CAA authorizing citizen suits also has a pre-suit notice requirement, where no action may be commenced prior to 60 days after plaintiff provides notice of a violation to the Administrator of the Environmental Protection Agency, the State, and the alleged violator. 42 U.S.C. § 7604(b). Plaintiffs' complaint does not demonstrate compliance with the statutory requirements to bring a citizen suit under the CAA, so any claims brought under the CAA are also dismissed.

The Court next pivots to Plaintiffs' reference to the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"). The claims related to these acts arise from an incident related to trash collection. (Doc. 1, pp. 8, 41-46). First, Plaintiffs claim that their

neighbor, who is well-connected in the City, actively disrupts and prevents waste collection from occurring at their residence. (*Id.* at pp. 41-44). The City continues to issue citations against Plaintiffs, rather than their misbehaving neighbor, for unsanitary conditions on their sidewalk, improper waste bin placement, and other related violations, even though the City is aware of the issues with the neighbor. (*Id.*). Plaintiffs pay the City for utilities including trash, though trash services are contracted with a company called Republic Services. (*Id.* at pp. 17, 45). But when trash is not collected from the bins, Eldridge physically struggles to pull the full bins back towards the house and often cannot do so. (*Id.* at pp. 8, 45). Plaintiffs apparently made requests for disability accommodations related to trash collection, but the City claimed that Republic Services carried responsibility and otherwise ignored Plaintiffs' pleas. (*Id.* at p. 45). Plaintiffs withheld payment for trash collection services they were not receiving, and this unpaid bill led to the adverse consequence of Madison County denying their requested wheelchair ramp installation. (*Id.* at pp. 17, 46, 52).

In light of these ongoing issues, Plaintiffs ask that the City be ordered to prohibit others from interfering with waste collection and to provide reasonable accommodations for waste collection services to occur for persons with disabilities because the City charges for these services. (*Id.* at p. 13). Further, Plaintiffs ask "that the existing outstanding bill owed to the City of Alton for waste collection services be voided on the basis of the City of Alton not providing said services in violation of both Illinois State Law and the Federal Fair Housing Act." (*Id.*). Additionally, in relation to these claims, Plaintiffs assert that waste collection services are mandated by the State of Illinois and such interference "with

Page 8 of 16

fair housing is a violation of our federal civil rights." (*Id.* at p. 44).

With Plaintiffs' superficial references to the FHA and ADA, the Court is again left to guess as to what portion of these comprehensive statutes Plaintiffs accuse the City of violating and how it did so. While Plaintiffs charge the City with generally violating the ADA and failing to reasonably accommodate in trash collection, their complaint clearly details that the disruption in their garbage collection service is due to their neighbor, not the City. In addition, Plaintiffs do not disclose what reasonable accommodation they sought from the City that was allegedly denied.

Title II of the ADA covers discrimination in the provision of public services. *See* 42 U.S.C. §§ 12131-12165. Part A covers public services generally. *Id.* at §§ 12131–12134. Part A provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* at § 12132. "To state a Title II claim, a plaintiff must allege that he was excluded from participation in a public entity's program because of his disability." *McDaniel v. Bd. of Educ. of City of Chi.*, 956 F. Supp. 2d 887, 895 (N.D. Ill. 2013).

Here, Plaintiffs provide no such allegations to state a Title II claim. Plaintiffs claim that their neighbor routinely interfered with trash collection, and that the City cited Plaintiffs for improper garbage can placement. Their allegations do not properly state a claim under Title II of the ADA, because Plaintiffs do not allege that they were denied participation in garbage collection services, rendered inferior municipal services, or otherwise discriminated against because of their disabilities. Again, it appears that the

disruption to their garbage collection services was due to the direct actions of their neighbor. Moreover, their claims regarding the ramp are unrelated to any claim they raise under the ADA—Plaintiffs' refusal to pay their trash and sewer caused Madison County to deny their request for a ramp.

Any claim they wish to assert under the FHA fails for the same reason. Plaintiffs do not allege any discrimination based on their protected status—disability. For example, to state a claim under 42 U.S.C. § 3617, Plaintiffs must allege facts demonstrating: (1) they are protected individuals under the FHA, (2) they were engaged in the exercise or enjoyment of their fair housing rights, (3) Defendant was motivated in part by an intent to discriminate, or its conduct produced a disparate impact, and (4) Defendant coerced, threatened, intimidated, or interfered with Plaintiffs on account of their protected activity under the FHA. *East-Miller v. Lake Cnty. Highway Dep't*, 421 F.3d 558, 563 (7th Cir. 2005). Section 3604(b) also prohibits discrimination in the provision of services or facilities in connection sale or rental of a dwelling, including services generally provided by governmental units such as police and fire protection or garbage collection. 42 U.S.C. § 3604; *see Southend Neighborhood Improvement Ass'n v. St. Clair Cnty.*, 743 F.2d 1207, 1210 (7th Cir. 1984).

To state a claim under the FHA, Plaintiffs must connect the alleged exclusion from trash collection services to discrimination based on disability. Here, again, their neighbor appears to have disrupted trash collection services, seemingly out of an ongoing personal vendetta. Plaintiffs accuse the City of inaction—allowing the neighbor to act unpunished—because of the connections the neighbor has with City officials, not due to

disability discrimination. Further, Plaintiffs allege the City issued citations for improper trash bin placement, but also fail to connect these citations to disability discrimination in violation of the FHA. To reiterate, the Court is merely guessing as to which provisions of each statute Plaintiffs attempt to invoke, because their references to each are passing and vague. But even if Plaintiffs mean to invoke these provisions, their allegations fall short of stating a claim for relief. Thus, any claims brought under the ADA or FHA are dismissed.

In its reading of the complaint, the Court can only discern a few other types of constitutional claims—procedural due process and equal protection violations under the Fourteenth Amendment.[4] As to equal protection, Plaintiffs claim that the City fails to apply its law equally and fairly because it allows their neighbor to create conditions which the City considers an ordinance violation, and instead of punishing the neighbor, the City takes action against Plaintiffs—the victims. With respect to due process, Plaintiffs allege that the City began targeting only Scharfinski with ordinance violation citations, even though both Scharfinski and Eldridge own the property. Plaintiffs assert that Eldridge, as a co-owner of the property, should be able to speak in court, and he was denied that right on multiple occasions. Plaintiffs also state, "[t]he fact [that] each case was ultimately dismissed before it led to a fine does not change the fact that [Eldridge] was denied his right to speak in court." (Doc. 1, p. 22).

---

[4] Plaintiffs also mention the Fifth Amendment in a portion of their complaint describing due process violations. But the "Fourteenth Amendment creates a due process right against the states, while the Fifth Amendment guarantees due process by the federal government." *Massey v. Wheeler*, 221 F.3d 1030, 1036 n. 1 (7th Cir. 2000) (internal citations omitted).

While the complaint does not reference 42 U.S.C. § 1983, Plaintiffs' constitutional claims are necessarily brought under this provision, which provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "A municipality or other local government may be liable under this section if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted); *see also Monell v. Dep't of Social Servs. Of City of New York*, 436 U.S. 658, 692 (1978). But municipalities can only be held responsible for their own illegal actions and are not vicariously liable for their employees' actions. *Connick*, 563 U.S. at 60. Further, to state a claim against a municipality under § 1983, a plaintiff must allege that a municipal policy, widespread practice, or final policymaker's decision caused the alleged constitutional violation. *Wis. State Senate v. City of Green Bay*, 719 F. Supp. 3d 869, 884 (E.D. Wis. 2024). And liability only attaches if the policy, custom or practice, or decision was the moving force behind the federal-rights violation. *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 829 (7th Cir. 2022).

Scattered throughout their complaint, Plaintiffs reference equal protection clause and due process violations. Plaintiffs also make several allegations like, "employees of the City of Alton were aware of the [smoke] hazard and chose to permit it to continue," "one or more employees of the City of Alton specifically chose to permit the smoke to persist," "city employees are the ones practicing unequal enforcement [of the law]," and

"the employees have taken enough illegal actions of their own." (Doc. 1, pp. 11, 19, 20). But Plaintiffs have failed to state a claim against the City itself by not alleging that their rights were violated as a result of a municipal policy, widespread practice, or a final policy maker's decision rather than the choices or actions of individual city employees.

Moreover, there must be an underlying constitutional violation for which to hold the municipality responsible. The complaint also fails to state a claim for the alleged constitutional deprivations of equal protection and procedural due process violations. The equal protection clause of the Fourteenth Amendment prevents state actors from denying anyone within their jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV. Further, the purpose of the clause "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiffs attempt to string together a handful of ordinance violations issued by the City to substantiate an equal protection claim. Their complaint states that the laws are inequitably applied against them and not applied the same way against others.[5] But Plaintiffs' complaint merely references a few citations for tall grasses, a violation for garbage can placement, and another for exterior damage to their home. The complaint

---

[5] Plaintiffs do not tie these actions to their membership in a protected class for their disabilities but assert more of a "class-of-one" claim. Essentially, they argue that their neighbor is treated differently because he is close with city employees. To state a so-called "class-of-one" equal protection claim, a plaintiff must allege that he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Geinosky v. City of Chi.*, 675 F.3d 743, 747 (7th Cir. 2012).

affirms that each of these ordinance violations had some kind of legitimate basis, but that Plaintiffs had a viable excuse for challenging each one. For example, Plaintiffs argue the tall grasses are really flowering plants, which should be permissible. They also claim that the trash can placement was deemed proper by Republic Services and that their neighbor occasionally prevented proper placement. And further, Plaintiffs contend that the damage to their house was caused by a falling tree that the City should have removed.

The complaint actually demonstrates that the City had a legitimate basis to issue each of the citations, even though Plaintiffs had a reasonable rebuttal to each. Plaintiffs evidently successfully contested the citations in state court, presumably after providing their various justifications. The allegations in the complaint do not demonstrate a violation of the equal protection clause, even if the complaint vaguely alludes to the fact that their neighbor is "well connected" with city employees and seems to remain unpunished for whatever violations he commits. Plaintiffs do not allege that their neighbor violated the same ordinances but was treated differently. Notably, if their neighbor has committed torts against them, Plaintiffs should pursue civil remedies against the neighbor under state law.

As for due process, generally, "a procedural due process claim requires a plaintiff to show that state actors deprived him of a protected property or liberty interest and that he did not receive adequate process when he was deprived of that interest." *Adams v. Reagle*, 91 F.4th 880, 889 (7th Cir. 2024). Plaintiffs allege that Eldridge, an equal owner of the home, was omitted from the ordinance violation notices and prevented from participating in state court proceedings related to each violation. First, the complaint

alleges that Scharfinski fully owned the adjacent lot with the garden and that several citations were issued in relation to that property. (Doc. 1, p. 9). Thus, Eldridge had no protected interest in that property. As to the other citations for the property they co-owned, Eldridge has a protected interest in that property. Plaintiffs allege "[Eldridge] was denied the right to speak in court in defense of his property multiple times and is similarly ignored when he attempts to speak with the City of Alton about the citations," and "we requested for [Eldridge] to be permitted to be made a participant of the case [but] that was denied because the district court determined that the plaintiffs get to decide who the defendants are." But fatal to their claims, Plaintiffs fail to allege any *deprivation* of a property interest that required due process. According to the complaint, all the citations were dismissed. Thus, Plaintiffs also fail to state a claim for violation of Eldridge's procedural due process rights, as he suffered no deprivation of any property interest.

While the Court is sympathetic to the ongoing issues and grievances that Plaintiffs seem to have within their community, the complaint fails to state a claim for relief upon which relief can be granted in federal court. For the reasons set forth above, the complaint is dismissed.

The Court **GRANTS** both motions to proceed *in forma pauperis*. (Docs. 2, 3). But, because Plaintiffs have failed to state a claim upon which relief can be granted, the Court **DISMISSES** the Complaint (Doc. 1) **without prejudice**. Plaintiffs shall have until **April 28, 2025,** to file an amended complaint that properly states a claim for relief, if they can reasonably do so. Any claims discussed above that the Court dismissed *with prejudice* may

not be included within the amended complaint. The Court **DENIES without prejudice** the Motion for Service of Process at Government Expense (Doc. 4). Plaintiffs can refile this motion along with their amended complaint, if they choose to file one. Failure to file an amended complaint within the time permitted will result in the dismissal of this action.

The Court also advises Plaintiffs that if they wish to amend their complaint, they must comply with Rule 8(a) of the Federal Rules of Civil Procedure. Their complaint must include: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the plaintiff is entitled to relief; and (3) a demand for the relief sought. FED. R. CIV. P. 8(a). In the original complaint, Plaintiffs provided a long narrative of the history between themselves, their neighbor, and the City of Alton. But instead of including such a detailed history of every grievance with their neighbor and the City, Plaintiffs must identify and provide the *relevant* facts that support plausible *claims for relief* in this federal action.

**IT IS SO ORDERED.**

DATED:   March 28, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**